UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jason A.,[1]

                    Plaintiff,                                  Case No.  23-cv-104 (JRT/LIB)

        v.                                              **REPORT AND RECOMMENDATION**

Martin J. O'Malley,
Commissioner of Social Security Administration,

                    Defendant.

Plaintiff, Jason A. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules which govern actions seeking judicial review of a decision of the Commissioner of Social Security, the present action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief requesting that the present action be remanded to the Social Security Administration. [Docket No. 13]. Rather than filing a brief as provided in newly amended Rule 5, Defendant filed a Motion for Summary Judgment as was the procedure prior to the amendment to Rule 5. [Docket No. 15].

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name only his first name and last initial are provided.

For the reasons discussed herein, the undersigned recommends that Plaintiff's request for relief, [Docket No. 13], be **GRANTED**, and Defendant's Motion for Summary Judgment, [Docket No. 15], be **DENIED**.

## I.  Background

On July 6, 2020, Plaintiff filed a Title XVI application for supplemental social security income. (Tr. 15, 246–254).[2] Plaintiff alleged that his disability began on January 1, 2001. (Tr. 15, 246). The Commissioner initially denied Plaintiff's claims on November 25, 2020, and again, upon reconsideration, on April 15, 2021. (Tr. 15, 67–83, 86–96). On April 26, 2021, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 15, 114–116).

Administrative Law Judge Nicholas Ohanesian (hereinafter "ALJ") conducted a telephonic hearing on December 13, 2021. (Tr. 15, 33–66). At this administrative hearing, Plaintiff was represented by an attorney. (Tr. 15, 33–66). During the administrative hearing, the ALJ heard testimony from Plaintiff and an independent vocational expert, Matthew Lampley ("IVE Lampley"). (Tr. 15, 33–66).

On January 26, 2022, the ALJ issued a decision denying Plaintiff's request for supplemental social security income. (Tr. 12–27). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act during the relevant time period. (Tr. 27).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–7). Subsequently, on November 29, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 12], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 748 pages. (See Administrative Record [Docket No. 12]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On January 12, 2023, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, this matter was presented to the Court for review pursuant to the parties' filings, [Docket Nos. 13, 15], and the Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20

C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1.)

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the

Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform any of his prior, relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

In the present case, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since the date of his application for benefits, July 6, 2020. (Tr. 17). This finding is not in

dispute. The Court will refer to the time period between the date of Plaintiff's application for benefits and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: degenerative joint disease of the right hip, antisocial personality disorder, posttraumatic stress disorder (PTSD), and substance abuse disorder." (Tr. 17). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 1.18, 12.08, or 12.15. (Tr. 19–22). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can no more than occasionally operate foot controls with the right lower extremity. The claimant is limited to occasional climbing of ramps and stairs and can never climb ladders, ropes, or scaffolds. He is limited to occasional balancing, stooping, kneeling, crouching, and crawling. The claimant can tolerate no more than frequent exposure to extremes of cold and wetness. The claimant is limited to receiving, comprehending, and executing simple, routine, and repetitive tasks. He can have no more than occasional contact with the public and cannot perform transactional work. He is limited to occasional contact with supervisors, and he requires a non-authoritarian style of management. He is limited to occasional changes in the work setting.

(Tr. 22). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, the ALJ also concluded that Plaintiff's "statements concerning the intensity,

6

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 23). Plaintiff does not directly challenge this credibility determination by the ALJ.[3]

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Lampley, the ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. 26). Plaintiff does not challenge this finding by the ALJ.

At step five, the ALJ, again relying on the testimony from the independent vocational expert, IVE Lampley, found that "considering the [Plaintiff's] age, education, work experience, and residual functional capacity," there existed jobs in significant numbers in the national economy which Plaintiff could perform. (Tr. 26). Specifically, the ALJ found that Plaintiff would be able to perform the work of a "collator operator" of which there are 31,000 positions in the national economy; "routing clerk" of which there are 46,000 positions in the national economy; and "sorter" of which there are 42,000 positions in the national economy. (Tr. 27). Plaintiff directly challenges the ALJ's finding here at step five and implicitly challenges the ALJ's finding at step five in as much as it is based on the challenged RFC determination.

The ALJ thus found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 27).

## IV. Analysis

Plaintiff asserts one overarching argument in his appeal of the ALJ's decision: the ALJ's decision is not supported by substantial evidence in the record. (See Plf.'s Mem. [Docket No. 13]

---

[3] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

at 10–19). Specifically, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC determination contains "two non-vocational terms that the ALJ did not clarify or explain" and because the ALJ failed to consider all the opinion evidence in the record. (Id. at 10–12, 14–19). Plaintiff further argues that the ALJ's decision at step five of the sequential analysis is not supported by substantial evidence because the vocational expert's testimony, upon which the ALJ's step five finding is based, resulted from a hypothetical question that did not contain all the limitations found in the ALJ's RFC determination. (Id. at 13).

The Commissioner contends that he is entitled to summary judgment, arguing that each of Plaintiff's arguments is unavailing. (Def.'s Mem. [Docket No. 16]). Defendant further contends that the ALJ's opinion is supported by substantial evidence in the record as a whole. (Def.'s Mem. [Docket No. 16]). Regarding Plaintiff's argument that the hypothetical questions posed to the vocational expert do not contain all the limitation found in the ALJ's RFC determination, Defendant concedes that two of the limitations were omitted from the hypotheticals posed to the vocational expert, but he argues that the error was harmless. (Def.'s Mem. [Docket No. 16]).

Although Plaintiff offers several arguments in support of his request for remand, only one argument warrants significant discussion here. The Court need only address one of Plaintiff's arguments because, as Plaintiff argues, the ALJ's finding at step five of the sequential analysis is not supported by substantial evidence due to the fact that the ALJ failed to present a properly crafted hypothetical question to the vocational expert. This represents reversible error warranting remand.

It is undisputed in the present case, that the ALJ concluded that Plaintiff is unable to perform his past relevant work. Thus, the burden shifts to the Commissioner, through the ALJ, to

demonstrate that Plaintiff retains the residual functional capacity to engage in other substantial, gainful activity. See, e.g., Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

This burden of demonstrating that a plaintiff retains the residual functional capacity to engage in other substantial, gainful activity is satisfied by showing the existence of jobs in the national economy which said plaintiff can perform given the ALJ's underlying RFC determination. See Id. This determination is undertaken at step five of the sequential analysis. If the underlying RFC determination contains only exertional limitations,[4] the ALJ may demonstrate the existence of jobs in the national economy which a plaintiff is capable of performing by referencing the Medical-Vocational Guidelines contained within the Social Security Administration's regulations. See Stewart v. Sec'y of Health & Hum. Servs., 957 F.2d 581, 586 (8th Cir. 1992). However, when an ALJ's underlying RFC determination contains nonexertional limitations[5] along with exertional limitations, the testimony of a vocational expert is required to establish the existence of jobs in the national economy which an individual is capable of performing given the underlying RFC determination. See, e.g., Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994); Crawford v. Colvin, 809 F.3d 404, 409–10 (8th Cir. 2015).

An ALJ may, however, only rely on a vocational expert's testimony as substantial evidence when said testimony is "based on a properly-phrased hypothetical" question which sets forth all of the plaintiff's impairment which the ALJ found credible. Howard v. Massanari, 255 F.3d 577, 581–82, (8th Cir. 2001); see, e.g., Gieseke v. Colvin, 770 F.3d 1186, 1188 (8th Cir. 2014). An ALJ's hypothetical question to a vocational expert is a properly-phrased hypothetical

---

[4] "An exertional limitation affects one's ability to meet the strength demands of a job such as sitting, standing, walking, lifting, carrying, pushing, and pulling." Crawford v. Colvin, 809 F.3d 404, 409–10 (8th Cir. 2015) (cleaned up) (quoting 20 C.F.R. § 404.1569a(a)).

[5] "Nonexertional limitations include anxiety, depression, difficulty concentrating, memory deficiencies, sight and hearing impairments, difficulty tolerating dust or fumes, and 'manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.'" Crawford, 809 F.3d at 410 (quoting 20 C.F.R. § 404.1569a(c)(1)).

if it includes all the plaintiff's relevant impairments and limitations which the ALJ found credible. <u>Baugus v. Secretary of Health and Human Serv.</u>, 717 F.2d 443, 447 (8th Cir. 1983); <u>Gragg v. Astrue</u>, 615 F.3d 932, 940 (8th Cir. 2010); <u>Buckner v. Astrue</u>, 646 F.3d 549, 561 (8th Cir. 2011).

At step five of the sequential analysis in the present case, the ALJ determined that Plaintiff would be able to perform the work of a "collator operator," a "routing clerk," and "sorter." (Tr. 27). In reaching this determination, the ALJ relied solely on the testimony of the vocational expert, IVE Lampley. (Tr. 27).

Thus, the question now before the Court is whether the at-issue hypothetical question the ALJ posed to IVE Lampley contained all of Plaintiff's relevant impairments and limitations which the ALJ found credible. If this hypothetical question accounted for all of Plaintiff's relevant impairments and limitations which the ALJ found credible, then IVE Lampley's testimony may constitute substantial evidence in support of the ALJ's findings at step five of the sequential analysis. <u>Baugus</u>, 717 F.2d at 447; <u>Buckner</u>, 646 F.3d at 561. However, if the ALJ's at-issue hypothetical question failed to account for all of Plaintiff's relevant impairments and limitations which the ALJ found credible, then IVE Lampley's testimony cannot constitute substantial evidence in support of the ALJ's findings at step five of the sequential analysis. <u>Baugus</u>, 717 F.2d at 447; <u>Buckner</u>, 646 F.3d at 561.

At the administrative hearing, the ALJ put forth the following hypothetical to IVE Lampley:

> Now, I'd like for you to assume a person of the claimant's age, education, and work experiences who . . . is going to be limited to what I'm going to call less than a full range of light work with occasional climbing of ramps and stairs[;] [n]ever climbing ladders, ropes, and scaffolds[;] . . . [and] occasional balancing, crouching, and crawling. Further, hypothetical individual . . . is going to be limited to occasional foot controls with the right lower extremity. Limited to

frequent exposure to extreme cold and wetness. And further limited . . . to receiving, apprehending [sic], and executing simple, routine, repetitive tasks with . . . occasional contact with the public [but] with no transactional work. Occasional contact with workers [and] with no tandem tasks. . . . Occasional changes in the work setting. . . . Occasional contact with supervisors working in a non-authoritarian management style.

(Tr. 60–62). In response to the ALJ's question of whether there was "work available in the national economy that would be consistent with the hypothetical provided," IVE Lampley testified that said hypothetical individual could perform the work of a "collator operator," a "routing clerk," and a "sorter." (Tr. 61–62).

As discussed above, the ALJ made the following RFC determination:

[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can no more than occasionally operate foot controls with the right lower extremity. The claimant is limited to occasional climbing of ramps and stairs and can never climb ladders, ropes, or scaffolds. He is limited to occasional balancing, stooping, kneeling, crouching, and crawling. The claimant can tolerate no more than frequent exposure to extremes of cold and wetness. The claimant is limited to receiving, comprehending, and executing simple, routine, and repetitive tasks. He can have no more than occasional contact with the public and cannot perform transactional work. He is limited to occasional contact with supervisors, and he requires a non-authoritarian style of management. He is limited to occasional changes in the work setting.

(Tr. 22).

It is patently evident from the present record that the hypothetical question the ALJ proffered to IVE Lampley does not contain all the limitations the ALJ found credible and included in his RFC determination. (Compare Tr. 22 with Tr. 60–62). Defendant in fact concedes this point. (Def.'s Mem. [Docket No. 16] at 8). Specifically, the ALJ's hypothetical question to IVE Lampley did not include or account for the limitations on Plaintiff's ability to stoop and kneel which the ALJ found credible and included in his RFC determination. (Compare Tr. 22 with Tr. 60–62).

Because the hypothetical question put forth by the ALJ to IVE Lampley did not account for all of the mental and physical impairments which the ALJ credited and included in his RFC determination, IVE Lampley's testimony cannot constitute substantial evidence in support of the ALJ's finding at step five of the sequential analysis. See e.g., Howard v. Massanari, 255 F.3d 577, 581–82, (8th Cir. 2001); Gieseke v. Colvin, 770 F.3d 1186, 1188 (8th Cir. 2014); Baugus v. Secretary of Health and Human Serv., 717 F.2d 443, 447 (8th Cir. 1983); Gragg v. Astrue, 615 F.3d 932, 940 (8th Cir. 2010); Buckner v. Astrue, 646 F.3d 549, 561 (8th Cir. 2011).

In reaching his findings at step five of the sequential analysis, the ALJ relied exclusively on the testimony of IVE Lampley. However, for all the reasons discussed above, IVE Lampley's testimony cannot constitute substantial evidence. Other than IVE Lampley's testimony, the ALJ failed to offer any other evidence in support of his findings at step five of the sequential analysis.

On this basis, the Court finds that the ALJ's finding at step five of the sequential analysis that Plaintiff could perform the work of a "collator operator," a "routing clerk," and a "sorter" is not supported by substantial evidence in the record. Thus, remand is required. Spicer v. Astrue, No. 11-cv-3679 (RHK/JJG), 2013 WL 951582, at *11 (D. Minn. Feb. 11, 2013) ("Where the ALJ's RFC finding is inconsistent with the hypothetical question he relied on in finding the claimant not disabled, remand is required.") (citing Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005)), report and recommendation adopted sub nom. Spicer v. Colvin, 2013 WL 950850 (D. Minn. Mar. 12, 2013).

Nevertheless, Defendant unpersuasively argues that it was not "reversible error" for the ALJ to rely upon testimony from IVE Lampley which was elicited in response to a hypothetical question which failed to account for all Plaintiff's limitations which the ALJ found credible.

(Def.'s Mem. [Docket No. 16] at 8). For all the reasons discussed herein, the ALJ error here was not a harmless error.

It is well settled that harmless error review is applicable to social security administrative appeals, Shinseki v. Sanders, 556 U.S. 396, 409 (2009), and that a harmless error does not warrant remand. Byes v. Astrue, 687 F.3d 913, 917–18 (8th Cir. 2012). It is typically the plaintiff who bears the burden of demonstrating harm. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). To do so, a plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012) (citing Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008); Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003)).

As an initial matter, it is important to note that the harmless error analysis in the present case is materially distinguishable from the typical harmless error analysis undertaken in social security administrative appeals. The present harmless error analysis is distinguishable from the routine harmless error analysis in a social security appeal because of the step at which the error occurred. The overwhelming majority of Courts undertaking a harmless error analysis are reviewing errors at steps one through four of the sequential analysis where the burden of proof is on the plaintiff. However, in the present case, the ALJ's error occurred at step five of the sequential analysis where the burden of proof shifts to the Commissioner of Social Security to prove that a plaintiff retains the residual functional capacity to engage in other substantial, gainful activity.

Although Defendant does not cite to any case where a Court found an ALJ's error at step five to be harmless error despite the lack of any substantial evidence in the record in support of the ALJ's step five determination, there do appear to be outlier cases which reach this conclusion

using a routine harmless error analysis for an error occurring at step five of the sequential analysis. Rehm v. Colvin, No. 1:12-cv-7502, 2014 WL 1047255, at *10 (S.D.W. Va. Mar. 18, 2014); Gleason v. Colvin, No. 1:15-cv-12 (NT), 2015 WL 7013661, at *5 (D. Me. Oct. 15, 2015), report and recommendation adopted, 2015 WL 7012739 (D. Me. Nov. 12, 2015). In addition to the noncontrolling nature of these outlying cases, the undersigned finds them unpersuasive because they fail to discuss or even acknowledge how the harmless error analysis should be applied or adjusted when undertaken at step five of the sequential analysis where the burden of proof is on the Defendant.

The harmless error analysis in the present case is further distinguishable from the routine harmless error analysis because of the complete lack of substantial evidence in support of the ALJ's determination at step five of the sequential analysis. Typically, when a court determines that an error was harmless in a social security appeal the Court does so based on its finding that other substantial evidence in the record supports the ALJ's decision and there has been no showing that correcting the error would have changed the ALJ's decision. In the present case, however, the ALJ's error resulted in the present record being entirely devoid of any evidence in support of the ALJ's determination that Plaintiff could perform other work in the significant numbers in the national economy.

Moreover, the single case to which Defendant cites in support of his argument that the ALJ's error in this case was harmless is materially distinguishable from the present case. (See Def.'s Mem. [Docket No. 16] at 8 (citing Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012)). Byes involved an ALJ who determined the plaintiff was not disabled using Rule 202.18 of the "grid" rules found in the Medical-Vocational Guidelines. Byes, 687 F.3d at 917. The Court determined that the ALJ should have used Rule 201.23 but found the error harmless because

even applying the correct rule, Rule 201.23, would have resulted in a finding of "not disabled." Id. In other words, the Court found the error harmless because even if the error had been corrected the record still contained substantial evidence in support of the ALJ's finding at step five of the sequential analysis—Rule 201.23. Id. This is not the circumstance of the present case in which the record now before the Court lacks any evidence in support of the ALJ's finding that Plaintiff could perform other work in the significant numbers in the national economy. The ALJ here may not rely on the "grid" rules found in the Medical-Vocational Guidelines because his RFC determination contains both exertional and nonexertional limitations. See, e.g., Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994); Crawford v. Colvin, 809 F.3d 404, 409–10 (8th Cir. 2015).

Defendant also argues that the ALJ's error was harmless based on Defendant's interpretation of the Dictionary of Occupational Titles (DOT). Specifically, Defendant argues that any error by the ALJ at step five was harmless because the DOT's description of the three occupations identified by the ALJ at step five of the sequential analysis require no "stooping or kneeling," and therefore, all three occupations remain consistent with the ALJ's RFC determination. (Def.'s Mem. [Docket No. 16] at 8). The Court finds this argument to be unpersuasive.

As an initial matter, the Court notes that Defendant's DOT-related argument is unpersuasive because Defendant's reliance on the job descriptions within the DOT is misplaced. The DOT is not a definitive authority on job requirements. Moore v. Astrue, 623 F.3d 599, 604 (8th Cir. 2010). Instead, the DOT's definitions "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Hillier v. Soc. Sec. Admin., 486 F.3d 359, 366 (8th Cir. 2007) (quoting Wheeler v. Apfel, 224 F.3d 891, 897

(8th Cir. 2000)). "The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Jones v. Astrue, 619 F.3d 963, 977–79 (8th Cir. 2010) (quoting Wheeler, 224 F.3d at 897).

Defendant's DOT-related argument is also unpersuasive because it improperly assumes that the vocational expert, when presented with a properly-phrased hypothetical question, will testify in a manner entirely consistent with the DOT. There often exists discrepancies between a vocational expert's testimony and the DOT, including circumstances in which the vocational expert testifies that particular positions are performed in a manner inconsistent with the DOT. See Jones v. Astrue, 619 F.3d 963, 977–79 (8th Cir. 2010) (discussing such a conflict between the testimony of a vocational expert and the DOT).[6]

IVE Lampley's testimony in the present case is illustrative of the potential for conflict between the DOT and a vocational expert's testimony. During the December 13, 2021, administrative hearing, the ALJ asked IVE Lampley whether the job of "collator operator" still existed "in the economy in some more modern technology form" to which IVE Lampley responded in the affirmative citing the example of "Kinko's." (Tr. 61).[7] Overlooking the fact that "Kinko's" has not existed in almost twenty years, see Orfalea v. Clayton, Dubilier & Rice, Inc., No. 7-cv-2256 (BSJ/GWG), 2009 WL 3149453, at *2 (S.D.N.Y. Sept. 30, 2009) (discussing FedEx's acquisition of Kinko's which closed on February 12, 2004),[8] IVE Lampley reference to

---

[6] Neither the DOT or a vocational expert's testimony automatically controls when there is a conflict between the two; instead, it is the ALJ's responsibility to ask the vocational expert about any potential conflict and resolve said conflict. See Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014); Pol'y Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4p (S.S.A. Dec. 4, 2000).

[7] Kinko's was a customer service style business which provided copying services and certain computer services to the public for a fee. See Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522, 1528, 1536 (S.D.N.Y. 1991); PatentWizard, Inc. v. Kinko's, Inc., 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001).

[8] After its acquisition by FedEx, the merged entity became FedEx Office and Print Services, Inc. until the Kinko's moniker was removed making the entity name FedEx Office and Print Services, Inc. See Schwarz v. FedEx Kinko's

Kinko's as an example of a "collator operator" ostensibly creates a discrepancy between his

testimony and the DOT.

The DOT describes the job of "collator operator" as requiring no stooping or kneeling

with interactions involving coworkers, supervisors, and the public being a "not significant" part

of the job. See 208.685-010 Collator Operator, DOT 208.685-010, 1991 WL 671753 (providing

the following headings for the occupation of Collator Operator: "People: 8 - Taking Instructions-

Helping N-Not Significant"; "Stooping: Not Present - Activity or condition does not exist";

"Kneeling: Not Present - Activity or condition does not exist"); Edwards v. Saul, No. 1:20-cv-

2280 (SVH), 2021 WL 210852, at *16 (D.S.C. Jan. 20, 2021) (noting that "People: 8- Taking

Instructions-Helping N-Not Significant" equates to occasional interactions with coworkers,

supervisors, and the public); Cooley v. Berryhill, No. 2:17-cv-45 (DBH), 2017 WL 4809998, at

*3 (D. Me. Oct. 25, 2017) (same), report and recommendation adopted, 2017 WL 5492016 (D.

Me. Nov. 15, 2017). On the record now before the Court, the DOT's description of a "collator

operator" does not seem patently reconcilable with IVE Lampley's example of a Kinko's worker.

Absent further clarifying testimony from a vocational expert, it would be unreasonable for this

Court to assume, as Defendant invites the Court to do, that an individual with the RFC assessed

by the ALJ in the present case, including a limitation to occasional stooping and kneeling and

"no transactional work" would retain the capability to perform the tasks of the Kinko's worker

referenced by IVE Lampley.

Even assuming solely for the sake of argument that Defendant's interpretation of the

DOT is correct and the DOT supports the conclusion that Plaintiff is able to perform the three

occupations identified by the ALJ at step five, the Court would still not find the ALJ's error

---

Off., No. 8-cv-6486 (THK), 2009 WL 3459217, at *1 (S.D.N.Y. Oct. 27, 2009); Otterson v. Fed. Exp. Corp., No. 7-
cv-1274 (PK), 2009 WL 536280, at *1 n.1 (D. Or. Mar. 3, 2009).

harmless. Defendant has failed to highlight any authority demonstrating that an ALJ may rely on the DOT alone (or the ALJ's own interpretation of the DOT) as substantial evidence in support of his findings at step five.

Furthermore, Defendant's attempt to interpret the DOT's description of the identified occupations as substantial evidence in support of the ALJ's findings at step five is merely an improper post-hoc rationalization by Defendant of the ALJ's finding. The Court may not sustain an ALJ's decision based on the post-hoc rationalizations of Defendant in this Court. Kenneth J.V. v. Kijakazi, No. 22-cv-373 (KMM/DJF), 2023 WL 2394397, at *7 (D. Minn. Jan. 27, 2023) (explaining that this Court's review of agency action, such as the final decision of the Commissioner (through the ALJ) denying a claimant's application for benefits, "is limited to the grounds the agency invoked when it took the action"); Dept. of Homeland Sec. v. Regents of the Uni. of California, 140 S.Ct. 1891, 1907 (2020). The fact that the DOT's description of the occupations identified by the ALJ may be interpreted in a manner "consistent with the ALJ's findings is irrelevant. The ALJ's disability determination was based on the VE's testimony regarding Plaintiff's ability to perform other work in the national economy and was not based upon his reading of the DOT." Holley v. Astrue, No. 4:08-cv-4010, 2008 WL 5381313, at *5 (W.D. Ark. Dec. 22, 2008).

In summary, the Court finds that the ALJ erred by failing to propound a properly-phrased hypothetical question to the vocational expert. The Court further finds that said error was not harmless. As a result of this error, the record now before the Court lacks substantial evidence in support of the ALJ's finding that Plaintiff could perform the work of a "collator operator," a "routing clerk," and a "sorter." Because the ALJ's decision at step five of the sequential analysis is not supported by substantial evidence, the ALJ's over decision is not supported by substantial

evidence. Thus, remand to the Social Security Administration is required for further administrative proceedings.[9]

## V.  Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request for relief, [Docket No. 13], be **GRANTED**, as set forth above;

2. Defendant's Motion for Summary Judgment, [Docket No. 15], be **DENIED**; and

3. The above captioned matter be **REMANDED** to the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.

Dated:  January 12, 2024                                    s/Leo I. Brisbois
                                                            Hon. Leo I. Brisbois
                                                            United States Magistrate Judge

---

[9] Because the Court finds remand is appropriate on this issue, the Court does not address Plaintiff's other arguments in support of remand because the present remand could affect the resolution of those other issues, especially given the unique procedural posture of this case. For example, Plaintiff argues that the ALJ erred in his consideration of a medical opinion of Dr. Robert Hlavacek, D.O., because the ALJ failed to consider the opinion in a manner consistent with 20 C.F.R. § 404.1520c(c). But Dr. Hlavacek's opinion was not submitted to the Social Security Administration until Plaintiff requested review from the Appeals Council, (Tr. 8), and the caselaw regarding the new requirements of 20 C.F.R. § 404.1520c(c) are less than clear as to whether the Appeals Council is required to comply with the requirements of 20 C.F.R. § 404.1520c(c) in reviewing a medical opinion that was not in the record at the time the ALJ issued his decision. However, because Dr. Hlavacek's opinion is now part of the administrative record, Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992), the ALJ, upon remand, is required to consider Dr. Hlavacek's opinion in a manner consistent with 20 C.F.R. § 404.1520c(c).

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).